UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,**<br><br>                Plaintiff,<br><br>                v.<br><br>**ANIMAL AND PLANT HEALTH INSPECTION SERVICE,** *et al.*,<br><br>                Defendants. | Case No. 21-cv-1600 (CRC) |

## **MEMORANDUM OPINION AND ORDER**

The U.S. Department of Agriculture promulgates standards under the Animal Welfare Act ("AWA") for the care and handling of animals by dealers, exhibitors, and research facilities across the country. See 7 U.S.C. § 2131 et seq. The Department's Animal and Plant Health Inspection Service ("APHIS"), through its Animal Care unit, is responsible for ensuring compliance with those standards. Plaintiff American Society for the Prevention of Cruelty to Animals ("ASPCA") believes APHIS has not lived up to that responsibility. In this suit, ASPCA alleges that APHIS has adopted a policy that elevates education and cooperation over enforcement, enabling dog dealers in particular to violate the AWA with impunity.[1] ASPCA claims that the purported policy is arbitrary and capricious and contrary to law in violation of the Administrative Procedure Act ("APA").

---

[1] In addition to naming APHIS as a defendant, ASPCA also names the United States Department of Agriculture and Thomas J. Vilsack, in his official capacity as Secretary of the Department. The Court will refer to Defendants collectively as "APHIS."

ASCPA locates this alleged policy—which it dubs the "Customer Service Policy"—in USDA's Animal Welfare Inspection Guide, which aids Animal Care personnel in carrying out inspections and other duties, and in three agency policy statements issued in 2019 under the prior Administration. Mot. Complete and/or Suppl. Administrative R. ("Mot.") at 2; Am. Compl. ¶¶ 3–5, 53, 96, 108. Specifically, ASPCA claims the policy is embodied in three "rules" contained in the Guide: (1) the "Teachable Moments" rule; (2) the "Veterinary Care" rule; and (3) the "Courtesy Visits" rule. Mot. at 2. Both the "Teachable Moments" and "Veterinary Care" rules, according to ASPCA, instruct Animal Care inspectors to omit certain AWA violations from their inspection reports. Id. The "Courtesy Visits" rule, meanwhile, allegedly enables dog dealers to request compliance assistance from inspectors while shielding themselves from having violations reported. Id. The result, ASPCA says, is that dogs are suffering mistreatment and serial offenders of the AWA are going unpunished. Id. at 3.

APHIS has produced the administrative record and filed an index with the Court. See Notice Filing Index Certified Administrative R., ECF No. 31. ASPCA responded with a motion to complete and/or supplement the administrative record. The motion seeks to add six categories of information to the record, five of which are still in dispute: (1) data and documentation, including photographs and videos referenced in Animal Care unit inspection reports, on licensed dog dealer violations of the AWA; (2) the formula used by APHIS to calculate reported statistics on compliance with the AWA which themselves are in the record; (3) data and documentation regarding the imposition of statutory penalties against dog dealers, including APHIS's "full enforcement database;" (4) agency correspondence concerning supposed "rebukes" by Congress in connection with its annual appropriations from 2020 to 2022; and (5) two exhibits to ASPCA's complaint concerning alleged violations of the AWA by a dog dealer in Iowa. Mot. at

1–2, 8, 11; Am. Compl. Ex. 5.[2]  Summary judgment briefing has been stayed pending resolution of the present motion to supplement the record.

With the exception of category two—the formula used by APHIS to calculate compliance statistics cited in the designated record—ASPCA has not met its burden to show that the requested documents should be part of that record.  The Court will thus deny ASPCA's motion except as to the compliance formulas.

## I.     Legal Standards

When confronted with a challenge to final agency action under the APA, a court must "review the whole record or those parts of it cited by a party." Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 151 F. Supp. 3d 1, 12 (D.D.C. 2015), on reconsideration, 164 F. Supp. 3d 56 (D.D.C. 2016) (citing 5 U.S.C. § 706).  It is the responsibility of the agency to compile and produce the administrative record, "which must include all of the information that the agency considered either directly or indirectly." Id. (cleaned up).  An agency is "entitled to a strong presumption of regularity that it properly designated the administrative record." Oceana, Inc. v. Ross, 290 F. Supp. 3d 73, 77 (D.D.C. 2018) (cleaned up).  At the same time, an agency "may not skew the record in its favor" or "exclude information that it considered" on the ground that it did not rely on such information to make a final decision.  Nat. Res. Def. Council, Inc. v. Doremus, No. 20-CV-1150 (CRC), 2021 WL 2322349, at *2 (D.D.C. June 7, 2021) (cleaned up).

A plaintiff seeking to add materials to the administrative record may do so in two ways.  *First*, a movant may seek to complete the record with "evidence that should have been properly a

---

[2] APHIS has already amended the administrative record to include the results of a 2015 agency survey regarding the efficacy of its Teachable Moments program.  Opp'n Mot. Complete and/or Suppl. Administrative R. ("Opp'n") at 17.  The agency had been unable to locate the document previously.

3

part of the administrative record but was excluded by the agency." Univ. of Colo. Health, 151 F. Supp. 3d at 13 (citing WildEarth Guardians v. Salazar, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009)). A plaintiff using this pathway would need to "put forth concrete evidence and identify reasonable, non-speculative grounds for her belief that the documents were considered by the agency and not included in the record." Nat. Res. Def. Council, 2021 WL 2322349, at *2 (citing Oceana, 290 F. Supp. 3d at 78–79) (cleaned up).

*Second*, a movant may seek to supplement the record with "extra-judicial evidence that was not initially before the agency" but that it believes should nonetheless be included. Nat. Res. Def. Council, 2021 WL 2322349, at *2 (citing Oceana, 290 F. Supp. 3d at 78–79) (cleaned up). This method requires the plaintiff to "demonstrate unusual circumstances justifying a departure from the general rule against considering extra-record evidence." Id. (cleaned up). Courts have recognized three such unusual circumstances: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information [is] needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." Id. (quoting City of Dania Beach v. F.A.A., 628 F.3d 581, 590 (D.C. Cir. 2010)) (cleaned up).

## II. Analysis

### A. Final Agency Action

Before addressing the specific materials that ASPCA seeks to add to the record, the Court will address the government's contention that the motion should be denied because ASPCA has not challenged a final agency action. Opp'n Mot. Complete and/or Suppl. Administrative R. ("Opp'n") at 20. If there is no final agency action, the argument goes, then there is no record supporting that action, and no record that requires supplementation. Id. at 21. In the

government's view, APHIS has not adopted any overarching "Customer Service Policy" through the statements and guidelines that ASCPA highlights. Id. The government points to decades-old reports cited by ASCPA in its complaint that it says reflect APHIS's longstanding efforts, rather than some distinct new policy, to achieve compliance "through education and cooperation." Id. at 15, 20 (quoting a 2010 USDA Office of Inspector General ("OIG") report referenced in the complaint). What ASPCA is really doing, the government contends, is challenging APHIS's "day-to-day administration of the AWA simply by labeling it a policy and then insisting on the creation of a record containing every potentially relevant document." Id. at 1.

The government may well be correct. But its argument is untimely. The government could have sought dismissal of the complaint based on an absence of final agency action. Instead, it filed an answer, designated the administrative record, and agreed to a summary judgment briefing schedule. As ASPCA notes, entertaining APHIS's argument now, in a challenge to the completeness of the record the agency designated, would effectively treat it as a belated motion to dismiss. The Court will therefore assume for present purposes that the challenged policy exists and that it constitutes final agency action. APHIS may renew its argument at summary judgment.

### B. Requested Categories of Documents and Materials

*1. Documents and data relating to dog dealer violations (Category 1) and the imposition of statutory penalties on dog dealers (Category 3)*

Moving to ASPCA's specific requests, the Court will treat the first and third categories together. ASPCA seeks the addition of (presumably all) "documentation and/or data on dog dealer violations," complete with "photographs or videos referenced in inspection reports." Mot. at 6–8. APHIS justifies its "customer service approach" to enforcement, according to ASPCA, by claiming that it "promote[s] the humane treatment of animals more quickly and effectively

than traditional enforcement methods." Id. at 6 (citing Decl. of Kathleen Hartnett ("Hartnett Decl.") Ex. B at USDA00006102-08). ASPCA contends that, in order to make this claim, APHIS "*necessarily* considered the frequency with which dog dealers have violated the AWA both before and since the adoption of the Customer Service Policy, as well as the extent to which such violations are captured in inspection reports." Id. (emphasis added). ASPCA likewise claims that APHIS "necessarily considered" documents underlying individual enforcement actions—contained in its entire enforcement database—in assessing the relative effectiveness of enforcement versus "customer service (i.e., non-enforcement)." Mot. at 11; Reply at 12.

ASPCA has not met its burden to put forth "concrete evidence" that APHIS considered these materials. Simply asserting that APHIS "necessarily considered" the information sought does not, on its own, provide any concrete, non-speculative evidence that it did so. Styrene Info. & Rsch. Ctr., Inc. v. Sebelius, 851 F. Supp. 2d 57, 63 (D.D.C. 2012) ("Conclusory statements will not suffice[.]"). And apart from that assertion, ASCPA has not identified any concrete evidence to rebut the presumption that APHIS has properly identified the materials it considered in developing the challenged policy.

In any case, APHIS's generalized statements that compliance is better, or more efficiently, achieved through education and cooperation—even assuming that sentiment was crystallized in an actionable policy—do not strike the Court as being necessarily dependent on a review of individual dog inspection reports or enforcement actions. The Animal Care unit's views on enforcement could well have been informed by decisions on how best to allocate scarce inspection resources in light of overall compliance statistics and feedback from employee surveys on educational initiatives like Teachable Moments, which the agency did include in the record. Opp'n at 17. Other discrete factors may also have influenced APHIS's emphasis on

encouraging voluntary compliance.  See, e.g., Hartnett Decl. Ex. B at USDA00006108 (2018 report explaining that in "FY18, Animal Care faced unique constraints on its enforcement of the AWA and HPA as many hearings and appeals were postponed pending the issuance of a Supreme Court opinion challenging the constitutionality of the appointment" of ALJs.)

This is not a case where data underlying an agency's decision should be considered part of the record because "the raw data itself [was] at issue and was directly considered, analyzed, or manipulated by the agency in the course of reaching its decision."  See Univ. of Colo. Health, 151 F. Supp. 3d at 22–23 (quoting Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt., No. C-06-4884-SI, 2007 WL 3049869, at *4 (N.D. Cal. Oct. 18, 2007)) (cleaned up).  In University of Colorado Health, for example, the Court ordered that the record be supplemented with data underlying HHS's calculations of supplemental Medicare payments, in part, because the "federal register notices themselves" made plain that HHS had relied on cost report data for its calculation.  Id.  ASPCA has offered nothing approximating this level of proof—it presents no evidence showing that APHIS manipulated or considered any raw data contained in dog-dealer inspection reports, or revealed through specific enforcement actions, in developing the challenged policy.  Again, to the extent APHIS relied on overall compliance statistics, those figures are noted in the current record.

Alternatively, APHIS suggests that documentation concerning dealer violations and enforcement actions might constitute the third unusual circumstance justifying the supplementation of the record with extra-judicial materials: that the "agency failed to explain administrative action so as to frustrate judicial review."  Mot. at 6–8, 13–14; Reply at 22 n.8.  APHIS complains that, despite the "importance of recorded dog dealer violations" to the rationality of the policy, ASPCA "omitted all documentation and data" of these violations from

7

the record. Mot. at 6. It makes a similar argument with respect to documentation underlying enforcement actions. Id. at 13; Reply at 12–13. At summary judgment, however, APHIS will have an opportunity to ground any actionable policy in the materials it has designated in the record. And ASPCA will have an equal opportunity to establish that the agency acted arbitrarily and capriciously by not considering dog dealer inspection reports or specific enforcement actions reflected in APHIS's enforcement database, both of which the Court understands are publicly available. Mot. at 6, 13. The omission of this information from the record thus does not frustrate judicial review.

Finally, contending that APHIS has "imposed no statutory penalties against a licensed dog dealer" since 2017, ASPCA argues that adding the enforcement database to the record is necessary to evaluate whether the claimed Customer Service Policy has resulted in a lack of enforcement. Mot. at 10–11. ASPCA appears to suggest that in leaving the enforcement database out of the record, APHIS excluded data "adverse" to its decision. Mot. at 13; Reply at 22 n.8. But ASPCA fails to show that APHIS "deliberately or negligently" excluded enforcement records from the record. See Durand v. Bernhardt, No. 20-CV-338 (CRC), 2020 WL 13443286, at *3 (D.D.C. Oct. 22, 2020) (noting that "other than the existence of the" relevant emails, the plaintiffs provided no evidence that the agency deliberately or negligently excluded the emails from the record). To succeed under this prong, ASPCA would also need to show evidence of bad faith on the part of the agency, which it has not done. See Oceana, 290 F. Supp. 3d at 85 ("[T]he D.C. Circuit has recently explained that a party must show evidence of bad faith on the part of the agency to carry its burden.").

8

The Court will, accordingly, deny ASPCA's request to complete or supplement the record with all documentation regarding AWA violations by and statutory penalties imposed on dog dealers.

2. *Formula used to calculate reported compliance statistics (Category 2)*

ASPCA next urges the Court to include in the record the formula APHIS uses to arrive at the statistics found in its annual reports on compliance with the AWA by regulated entities. APHIS included the annual reports in the administrative record, although it stops short of acknowledging that the agency relied on the statistics themselves in developing the challenged policies. Mot. at 8–9; Opp'n 29–30. In any case, the record does not contain a description of how the agency calculated the figures.

For arbitrary and capricious review, Courts assess whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." St. Lawrence Seaway Pilots Ass'n v. U.S. Coast Guard, 357 F. Supp. 3d 30, 35 (D.D.C. 2019) (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Here, for example, ASPCA quotes APHIS's 2020 Impact Report as stating that "97% of AWA licensees and registrants [were] in substantial compliance through the use of inspections, guidance, and outreach." Mot. at 9.[3] To the extent APHIS buttresses the claimed policy by pointing to high rates of AWA compliance, it would assist the Court to know how those statistics are calculated. If, for instance, the compliance rates exclude noncompliance identified through Teachable

---

[3] ASPCA states that, after a meet-and-confer, APHIS agreed to add the 2020 Impact Report, along with the 2019 and 2021 reports, to the record. Mot. at 9.

Moments or Courtesy Visits, as ASPCA suggests, then the Court might view any connection between the compliance rates and challenged policy as more attenuated.

In a pair of cases involving challenges to HHS's regulations governing Medicaid reimbursements to hospitals, courts in this Circuit ordered the inclusion of the underlying formulas into the record to facilitate judicial review.  See, e.g., Univ. of Colo. Health, 151 F. Supp. 3d at 20 (holding that HHS's "payment calculation mechanism's absence from the administrative record" presented obstacle to effective judicial review); Lee Mem'l Hosp. v. Burwell, 109 F. Supp. 3d 40, 51 (D.D.C. 2015) (holding that record should include certain formulas underlying payment calculations because they are needed "to determine whether the agency considered all the relevant factors" in taking the challenged actions).  The Court will follow suit here.  While the formula at issue here appears less central to ASPCA's challenge than in the HHS cases, it could nonetheless aid judicial review to ensure APHIS considered relevant factors when implementing the alleged policy.  The Court will therefore order APHIS to supplement the record with that information to the extent it exists.

          *3. Agency correspondence regarding congressional "rebukes" (Category 4)*

Next, ASPCA claims that APHIS "withheld from the record all internal or external agency emails and memoranda that address Congressional rebukes" in recent appropriations cycles concerning its purported conciliatory approach to AWA enforcement.  Mot. at 16.  APHIS notes in response that much of the requested correspondence would be protected from disclosure under the deliberative process privilege.  Opp'n at 32; Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019) ("[P]redecisional and deliberative documents are not part of the administrative record[.]" (cleaned up)).  ASPCA accepts the point, Reply at 17, 23, so the Court will cabin its analysis to nondeliberative materials.

10

ASPCA has not met its burden of showing that documents addressing any negative statements by appropriators were considered by the agency in developing the challenged policy. ASPCA concedes that the statements it references occurred *after* the alleged customer service policy first crystallized. Reply at 18. It nevertheless argues that the documents are part of the record because APHIS *maintained* the policy and decided *annually* whether to keep the policies in the Inspection Guide. Id. at 18–19. Once more, ASPCA asserts that APHIS "*necessarily considered* the merits of the reprimands." Mot. at 17 (emphasis added). As evidence, ASPCA points to a document obtained through FOIA where APHIS officials discuss the relevant language from the 2020 appropriation. Id. at 18. This document, however, falls short of "concrete evidence"—even if some personnel within APHIS discussed Congressional criticism of its enforcement approach in some context or another, it does not prove the agency also considered the documents when enacting the challenged policy or deciding to maintain it.

ASPCA also briefly suggests that supplementation of the record with these documents is needed to ensure that APHIS did not "ignore[] an essential aspect of the problem," namely, "Congress's disagreement with a core aspect of the Customer Service Policy." Mot. at 17–18. But to satisfy the second, "relevant factors" ground for record supplementation, ASPCA would need to show that the document "do[es] more than raise 'nuanced points' about a particular issue; it must point out an 'entirely new' general subject matter that the defendant agency failed to consider." Oceana, Inc. v. Ross, 454 F. Supp. 3d 62, 70 (D.D.C. 2020) (quoting Pinnacle Armor, Inc. v. United States, 923 F. Supp. 2d 1226, 1234 (E.D. Cal. 2013)). ASPCA provides no further explanation for its claim, including how these alleged documents present any new issues not already covered in the record. In requesting "nondeliberative communications," ASPCA's request also lacks specificity, as the group itself admits. Reply at 19; see Standing

11

Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, No. CV 16-1534 (JEB), 2019 WL 2028709, at *3 (D.D.C. May 8, 2019) (noting that while plaintiffs do not have to "enumerate every document they want in a list or appendix," requesters "may not satisfy their burden to identify specific documents by asking for amorphous categories of information that may or may not exist or have been before the agency").  The Court will thus deny this request.

       4. *Exhibits to ASPCA's complaint concerning dog dealer Daniel Gingerich (Category 5)*

  Finally, ASPCA urges the Court to include in the record two exhibits to ASPCA's complaint concerning dog dealer Daniel Gingerich, an alleged AWA violator from Iowa.  Mot. at 19–20.  ASPCA points to a declaration from an APHIS inspector who assessed Mr. Gingerich's facility.  Id. at 20.  Since the declaration came from an APHIS employee, ASPCA asserts, there is a non-speculative basis to conclude that APHIS considered Gingerich's violations in developing the challenged policy.  Id.  But the notes of a single line inspector are insufficient proof that agency decision-makers were aware of and took these AWA violations into account in formulating an agency-wide enforcement policy.  ASPCA therefore cannot overcome the "strong presumption of regularity" afforded to the agency's designated record.  Standing Rock Sioux Tribe, 2019 WL 2028709, at *2 (cleaned up).

  Nor has ASPCA identified an unusual circumstance to justify supplementing the record with material the agency did not consider.  See Durand, 2020 WL 13443286, at *3.  The Court assumes that—by noting that APHIS was "obligated to consider" whether the policy "allowed the worst-of-the-worst AWA violators" to inflict pain on dogs without consequences—ASPCA is suggesting that the exhibits are necessary to show that APHIS ignored a "relevant factor."  Mot. at 19.  But ASPCA's argument is not sufficiently developed to succeed via this pathway—again, no proof is offered that these exhibits point to an "entirely new general subject matter that

the defendant agency failed to consider." Nat. Res. Def. Council, 2021 WL 2322349, at *6 (cleaned up).

The Court will thus deny this last request, too.

### III. Conclusion

For these reasons, it is hereby

**ORDERED** that [33] Plaintiff's Motion to Complete and/or Supplement the Administrative Record is **GRANTED IN PART** and **DENIED IN PART**.  Defendants shall supplement the administrative record with the formulas underlying the compliance statistics cited in the record, to the extent they exist.  The Motion is denied in all other respects.  It is further

**ORDERED** that Defendants shall complete the administrative record by April 5, 2023.  It is further

**ORDERED** that Plaintiff shall file its motion for summary judgment by May 5, 2023.  Defendants shall file their cross-motion for summary judgment and opposition to Plaintiff's motion by June 5, 2023.  Plaintiff shall file its reply in support of its motion and opposition to Defendants' cross-motion by June 19, 2023.  Defendants shall file their reply in support of their cross-motion, if any, by June 26, 2023.

**SO ORDERED**.

                                                            CHRISTOPHER R. COOPER
                                                            United States District Judge

Date: March 22, 2023